Hear ye, hear ye, hear ye. The United States Court of Appeals for the 11th Circuit is now open according to law. God save the United States in this honorable court. Good afternoon. This is Judge Wilson in Tampa, Judge Jordan is in Miami, and Judge Joe Pryor is in Atlanta. And we're here for an oral argument this afternoon. And the case is Willie B. Smith, III v. Commissioner, Alabama Department of Corrections. And Spencer J. Hahn is here for Appellate Smith. Edmund Gerard LaCour, Jr. is here for the Commissioner. And Mr. Hahn, are you ready to proceed with your argument? I am, Your Honor. You may. May it please the court. Until last Friday afternoon, the parties agreed that Mr. Smith had established Article III standing on his ADA claim. They still agree as to all the jurisdictional facts that are relevant to a constitutional standing analysis. The district court, however, added requirements to the Moody case and considered the merits of the underlying claim, which is the exact posture or procedure that this court rejected in the Moody case. We would note that Mr. Smith has established an injury in fact, sufficient to confer standing, and that would be he will be executed by lethal injection in eight days if he does not prevail in this lawsuit. This court in Moody said that it was beyond dispute, that the potential for loss of life is a cognizable injury. He has established causation. He alleged and defendants acknowledged that his injury is traceable to his disability and failure to accommodate. And furthermore, he has shown redressability. Defendants acknowledged in August in their pleading when the court asked us for briefing on jurisdiction, that he will continue to face the alleged harm unless defendants are ordered to take remedial action. They then said that that could be done by narrowly tailoring a remedy to address the violation as to Smith. As noted, the district court made the same mistake that was made in Moody. It conflated his standing with the merits of his claims. And as this court said there, if a plaintiff ultimately loses on the merits, and by definition did not have a substantive right to relief, he would never have had standing to Now, Mr. Hunt, Mr. Hunt, I appreciate your argument about Moody. And I think it has a fair amount of force speaking for myself. But in Moody, the choice was between not being executed. If Mr. Moody had been transferred to the custody of the federal government and being executed, and here the choices between at least at this stage of the litigation is between one method of execution and another method of execution. Tell me, can you tell me how that fits into the Moody paradigm? Yes, your honor, I would. First of all, I would note that it goes to something that this court actually said in Moody, which and it had to do with the 2241 versus 2254 aspect, but it does, I think, play a role here. And that is this court in Moody said that, that it was a properly a 2241, because technically, it was not it would effectively prevent Alabama from ever executing him. But this court noted that if Mr. Moody, for example, had been sentenced to a total of 20 years in prison for his federal offenses, his transfer to federal custody, I would not have prevented Alabama from carrying out the sentence, we would note here that the injury, in fact, is a substantially more painful execution, as alleged in our complaint. And as we attempted to establish at the evidentiary hearing, so we would note that certainly a person being executed, Mr. Smith would not be executable next week, had he been reasonably accommodated. We've seen in the pleadings and in the discovery, and the parties have agreed that there is no protocol in place right now. So it mirrors Moody considerably more than it might not. Mr. Hahn, I want to make sure I understand your injury in fact argument. As I understand your discrimination under the ADA that led to his inability to participate in the opt in program, established by the form that the Department of Corrections provided. Is that correct? Yes, Your Honor. And then you go on to say that Mr. Smith's inability to elect being executed by the most humane manner is a concrete injury. Is it are those two separate injuries? Or is that the same injury? Your Honor, I do think that there are multiple potential injuries here. The cleanest one, I suppose, would be that the form is a benefit, the ability to opt in, the ability to have a reasonable accommodation. As you can see, as is evident from our amended complaint, we allege that the statute itself created a benefit as well. And that benefit is the ability to opt in separate and apart from the form. But But for prospective relief, which you've requested here, you have to show injury threatened in the future and one occurring in the past. Yes, Your Honor. So if he had been so the current deadline that would have run on according to the district court July 2 of 2018, should not have applied to Mr. Smith because Mr. Smith was never reasonably accommodated. And until and unless they reasonably accommodate him, our argument is that the federal court can issue an order permitting him to essentially have what you would call a redo, but is more probably appropriately referred to as a full chance, considering his disability. So we would argue that right now we know that were this court or were the district court to order the Department of Corrections to accept a form, a late opt in after Mr. Smith were given a reasonable accommodation, he would be able to opt in and they would accept that form. So the past discrimination has continued forward because by discriminating against him in the past, they prevented him from obtaining the benefit and have caused this future harm, which may occur next week. Go ahead, Judge Wilson. Oh, go ahead. Oh, I was just going to ask this. Your answer to my question leads into the question of addressability. And what's your answer to the problem that the Alabama statute indicates that at this point, all executions will be carried out by lethal injection because of the running of the statutory deadline. Your Honor, I would point this to things like the election law cases that we cited in our briefing. The idea that a deadline cannot be reset would permit a state to enact a statute that was discriminatory in practice and face zero consequences and permit zero opportunity for a disabled person to obtain the benefits to which they were entitled. And I would note that when Congress enacted the Americans with Disabilities Act and when they amended the Americans with Disabilities Act, they made it clear that this statute was intended to be broadly interpreted as broadly as possible to ensure that the systemic and longstanding discrimination against disabled people in this country ended. And so we would note that this court, I'm sorry, the district court would be well within its rights to issue a preliminary injunction requiring them to provide the reasonable accommodation that they should have. They should not be allowed to run out the clock, in other words, on a federal civil rights statute. Is this a merits issue, like a statute of limitations more so than a standing issue? Well, I suppose the statute of limitations, I believe on this type of claim under Alabama law, which I think would cover would be two years from the date of the injury. We filed within that two year period. That's the catch all statute. I'm sorry, I think I may have confusion with my question. My question is whether the timeframe that's in the Alabama statute operates more as a merits question rather than the standing question. I believe it does. And I would note that again, the parties below agreed that the Department of Corrections could accept a late opt-in if a violation of the ADA were found. And so the parties below, and I realize we can't confer jurisdiction on a federal court, but when a fact such as that comes into play, it's sort of a odd scenario. It's a tied up issue of law, in fact, but we would argue that it is not a jurisdictional issue with regard to Article III standing. One possible answer, Mr. Hahn, is that in another one of the justiciability doctrines, mootness, the Supreme Court has said that the inability of a district court to provide relief, the legal ability of a district court to provide relief is a merits question and not a justiciability question. And so the argument could be made that it's the same here for standing purposes. And that was in Chafin v. Chafin, which was cited in Moody. And because we have to assume the validity of Mr. Smith's claim in analyzing standing, part of that assumption, it would seem to me, is that the court can't grant a relief you request. And that's an assumption that a court makes to determine whether or not Mr. Smith has standing. Whether or not the court can, in fact, give that relief is a question that goes to the merits. But again, that's only my perspective. I don't speak for Judge Wilson or for Judge Pryor. And we would not disagree with that analysis, Your Honor. Thank you. Well, so Mr. Hahn, I just want to make sure I understand exactly what relief you're requesting by this court. You're asking for a remand to the district court so that he can be given the benefit of the accommodation that he's entitled to under the Americans with Disabilities Act. And if so, what would that accommodation consist of? Well, Your Honor, I think it's—I went back and forth on this over the last week or so, and I think it's a weird—it feels like a civil procedure question, but I think technically the relief that this court can grant and should grant is that it vacate and remand the dismissal order and remand it for the district court to consider the motion for preliminary injunction on the merits and to consider the motion for partial summary judgment. I don't believe that this court can—and I hate to tell the court it doesn't have the authority to do something—but I don't think on the posture that we are at right now that this court can order the relief that he sought via preliminary injunction with respect to this particular appeal. In order to do that, we would have to determine that the court erred in determining that he's unable to establish standing, right? Yes, Your Honor, and we would argue that we—that on the law in this circuit and on the law of the United States Supreme Court, including Moody and Lujan, that we have established that he met the constitutional minimal standards for standing, that the appropriate remedy in this case would actually be to remand. The problem that occurs with that—and I know this is sort of off your question, but it does derive a little bit from what the relief we seek is, and we hinted at this in our briefing—and that is that if this court were to find in our favor that in a published decision, this court would not be able to expedite the mandate. Mr. Smith is scheduled to be executed eight days from today. Typically, this court takes 14 days to issue a mandate to give all members of the court an active service who have not recused an opportunity to determine whether to withhold the mandate. Until this court issues the mandate, Mr. Smith will not have a court in which he can appear with jurisdiction over his preliminary injunction question. So you would have to convince us that the record is clear that your client would have elected death by hypoxia if he were afforded an accommodation under the Americans with Disabilities Act, right? Because that's not plead—the state argues that you didn't plead that in your amended complaint. Yes, Your Honor. I don't believe that we were actually—that pleading that in the amended complaint was one of the elements necessary to establish a Title II. I think when you're talking about a discriminatory practice that you're attempting to get a reasonable accommodation for, the reasonable accommodation would not be give the person—let's say it's a job applicant—would not be give the person the job that they should have been given an accommodation in interviewing for. The accommodation is give them the reasonable accommodation and then give them the same opportunity on the same level playing field as a non-disabled person. Okay, so what would the accommodation be? In this case, it would be an opportunity to sit down with an attorney and or a psychologist who could help to explain and put this statute in the form into terms that Mr. Smith can understand. The district judge in this case made a finding of fact, didn't she, that he did consult with his attorney in a time that would enable him to make an election in accordance with the statute? She makes the finding that he can read, number one. Number two, he was provided the election form. And number three, there were multiple conversations with his attorney within a period of time that would have permitted him to make the appropriate election within the opt-in time. Are those findings of fact clearly or unbiased? Your Honor, I don't think that at this point the court should be considering those findings of fact because we're not here on the merits. But I would note this, that those findings of fact were limited. They were found before discovery had been completed. They were found before we had an opportunity to have Mr. Smith depose. And they are based on speculation, Your Honor. What the court found was that Mr. Smith had called a phone number associated with his lawyer and spoken for at most 300 seconds on one of those calls in the days after the form was distributed. What we do know is there's no evidence the lawyer received the form. There's no information as to what was discussed in the phone call. And we know that Mr. Smith was actively pursuing relief from his federal habeas in this court during that same time. And so the idea that we can take from that, that a lawyer would give a client with mental difficulties and a person who they are advocating is intellectually, two to intellectually disabled to be executed, would discuss a form orally over the phone in five minutes when it goes to something this complicated and complex and important seems unlikely. And so we would argue that the court's speculation below was unwarranted. It was not really a finding of fact. It was an attempt to speculate as to what may have been said during a phone call that occurred in the same time frame. So we would argue that that's not a finding of fact. The court was not making a finding of fact that had any relevance to what we're here on appeal on. And I realized that this court, I suppose we could move for a stay based on likelihood of success on the preliminary injunction separately and apart from this now that we're talking it through. But we would note that we believe back in February when the district court denied a preliminary injunction, she found in our favor on three factors. The fourth factor was the only one she did not. And that is the basis for a pending motion for partial summary judgment. Although we believe if we prevail on that, we would prevail on a motion for preliminary injunction. It's true that Mr. Smith had not been deposed, but he did have the opportunity to submit a declaration along with his briefing pursuant to the district court's order in which she expressed concern about the standing issues. So why wasn't that sufficient? And in that document, he could have, but did not say that he intended to elect and would have, but for the failure to give an accommodation. Well, your honor, I would note that in the record below is an email from me to the attorney general's office seeking an accommodation and that accommodation, and it was from December of 2020, seeking an accommodation of a late opt in via council because the statute requires that it be personally made in writing within that timeframe. We sought that accommodation council for the commissioner said they needed to look into it. They did look into it and they ultimately rejected it finding they had no authority. So there is record evidence that that is Mr. Smith after having consulted with a lawyer and after having had the form reviewed with him seeking a reasonable accommodation that was denied. So there is evidence there. Furthermore, if a person did not intend to elect nitrogen hypoxia, they would not have filed a lawsuit because the only benefit that they get from filing a lawsuit is the opportunity to elect because the default position is you don't get it. And so I think that this court can reasonably infer from the fact that Mr. Smith spent $500 filing a civil suit required under the prison litigation reform act, that this was not some attempt to parse out some obscure issue. This was vital to him and whether his attorneys and their pleadings failed to adequately anticipate a district court's concerns about standing on a question that does not go to standing should not be held against Mr. Smith. Well, for the reasons set forth in his briefing and here, Mr. Smith argues that he has established article three standing below. He notes that because if this court issues a decision favorable to him, the district court won't have jurisdiction until this court issues its mandate. He respectfully requests that this court either expedite the mandate if it rules in his favor to permit the court time to rule on it below or stay as execution until such time as the district court can rule on his motions for preliminary injunction and partial summary judgment. And unless this court has further questions, I will reserve the balance my time for rebuttal. Thank you. All right. Thank you, Mr. Han. Mr. McCoy, you may proceed. Thank you, Judge Wilson. May it please the court. I'd like to just pick up where my friend, Mr. Han, left off saying that this question of whether or not Mr. Smith wanted to elect does not go to standing. I fail to see how that could be the case. If he had no desire in June 2018 to elect, then it matters not whether or not he could understand the form that was a benefit only to those inmates who wanted to elect. And even if you accept the premise that he couldn't understand the import of the form in June of 2018, and therefore you shouldn't count that against him, he doesn't allege that had he had a reasonable accommodation, he would have taken advantage of the opportunity to elect. We've been at this case for two years now. And Judge Pryor, as you and nowhere in there does it indicate that during the statutory period, he had any desire to take advantage of hypoxia. Mr. McCoy, can I ask you a question? Why does the injury in fact, analysis focus only on the 30 day period in 2018? That is all that has been challenged, Your Honor. No, that's the legal theory of the challenge. I'm asking why the injury in fact, component of standing is necessarily limited to that 30 day period. Well, I don't think so. Say for example, let me give you a very different hypothetical. Okay, so I know this is not this case, and it's far removed from the case. But let's say you had an individual on Alabama's death row, at the time this Alabama law went into effect providing a 30 day period for a choice between one method of execution and another. Assume also that that person was unrepresented by counsel, because all of his legal avenues had been exhausted. And assume also that that person was blind and deaf. So that he claims that Alabama had to provide him a reasonable accommodation to let him learn about this new law that came into existence. Somehow, some way, Alabama had to let him know that this law was now on the books, that he had 30 days in which to do it and give him that sort of information to let him act on. Assume also that Alabama did not do any of those things in the 30 day period lapsed. And when he learned of the law six months later, he filed the same sort of lawsuit that Mr. Smith was filed here. What time frame do you use in that hypothetical to figure out injury? Well, I think one critical distinction there, Your Honor, is that he would have been pleading that had he known, he would have done something different. And we don't have that here. I know. But my question is, what time frame do you use to figure out injury? In fact, in that case, is it the 30 day period? The answer has to be no, right? Unless you could allege that the 30 day period, for some reason, was a violation itself. But that's not the theory of this case. That's not the injury we have here. The injury is tied to this decision to hand out the election form. But in my hypothetical, what time period do you use to figure out the injury in fact component of Article Three standing? Maybe having trouble following the import of the hypothetical, Your Honor, I apologize. So this gentleman in my hypothetical did not make an election within the 30 day period. Could only decide six months later when he learns about this that he would have chosen. Correct. Now I'm telling you that that hypothetical is different than this case. I appreciate that it's different in a lot of ways, including one of the ways that you started your argument with. Nevertheless, for determining injury, in fact, in my hypothetical, you would extend the period six months beyond the 30 day choice period, right? And you would say that if he learned, if he learned six months after the expiration of the 30 day period, that this law was on the books. And he says in his complaint, I would have chosen this other method of execution had I known about it. Had Alabama given me a reasonable accommodation, you count that as the alleged injury, right? I would think so, but I don't see how that helps Mr. Smith in this case. He chose through his lawyers. A year, two years after the fact to request that accommodation. Right. But his, his theory is not that he had such cognitive deficiency that it took him two years to figure this out. That's not the theory that's not pleaded in the case. So there are these critical allegations that are still missing the cognitive deficiency. And then, I mean, and that's even before you get into the facts of this case, which we were talking about during Mr. Mr. Han's argument that Mr. Smith could read, he had access to counsel. And so that's another critical deficiency in the complaint, Your Honor. He says that it was clear that without assistance, he wasn't likely to be able to understand this form. But what is not alleged is that he was didn't have assistance. Indeed, he had access. So if you look at one of the cases that Mr. Han relies on, the Burke Hall case, I mean, that was an ADA Title II case involving a jail. And there the inmate, he was a man who was legally deaf, had almost no ability to hear. He was arrested for a DUI and taken in and booked into the jail. Now he alleged that the jail had a special telephonic device for deaf people to be able to use that he could have used to call his girlfriend to tell her to come pick him up. And they admitted, Miami-Dade officials admitted that they had that and that they did not give it to him. And that might have been a Title II problem. But there was no injury is what this court held because he was able to use the regular phone, leave her a message. She got the message. She showed up to pick him up from prison the next day. So there's no harm, no foul and no jurisdiction. And that's what we're dealing with here. I think that destroys. But isn't that a merits question? They treated it as standing, Your Honor. They said no injury. I mean, it didn't say standing in particular, but they said we're affirming because there is no injury here and we don't have an injury. But how you read that decision as an Article III standing decision, even though it didn't indicate that it was addressing standing? I'll just I've got it right here. It did not say standing, but what they said was Mr. Burkall, because Burkall has shown no injury, we affirm the grant of summary judgment for Miami-Dade on Burkall's TDD claim. But that summary judgment was a summary judgment on the merits, if I recall correctly, was it not? I believe I would need to go back and read the district court decision. I'll admit I have not not done that. So it may have been that the district court ruled on the merits in this court affirmed because there was, quote, no injury, close quote. And what Miami-Dade argued was that even if Burkall was denied access to the special phone, he cannot show he suffered any injury as a result. I think that's what we're dealing with here. There's another case, and I apologize this was not cited in our briefs, this 2019 decision from this court, Aaron Private Management case, where the court talked, this is also a Title II case, where the court discussed, where the court discussed whether or not the plaintiff was able and willing to take advantage of this sort of program they wanted. I apologize, I'm having trouble with my computer. So the citation there, I'm sorry, Zoom has done strange things to my computer. I'm having trouble finding this citation without a lot of problems. But it's Aaron Private Management Company v. Berry, that's 912 F3rd 1330. Again, a 2019 published decision from this court. Aaron Private Management Company alleged that a certain Georgia law that was making it harder to build methadone clinics in Georgia was discriminatory under Title II. And what the court said in affirming the dismissal at the complaint stage on a motion to dismiss, was that the complaint lacked the sort of allegations needed to show that Aaron actually was able and ready to build this methadone clinic, but for this statutory impediment. He had alleged he wanted to, but he had not alleged the certain, the interstitial facts to show that it was actually the Georgia law that was the problem here. And Mr. Smith is facing the exact same problem. He alleges he had cognitive deficiencies, so he couldn't understand the form without assistance. He alleges he did not elect, but he doesn't fill in the gaps there and because of my cognitive deficiencies and the lack of reasonable accommodation, I didn't elect or if I had had that reasonable accommodation, I would have elected. And so we don't have causation and we don't have an injury. And so the district court properly held that it did not have jurisdiction. Mr. LaCour, I wonder if the sua sponte order by the district court was premature given the fact that there were four depositions that remain to be taken in this case, that were scheduled. There were five motions that were outstanding. Doesn't appear that the record was fully developed in order for the district judge to make a fair and informed decision about whether Mr. Smith was able to demonstrate an insurance sufficient to find that he has standing to bring his back to me. In fairness, your honor, I would dispute that. And back at the motion to dismiss and preliminary injunction hearing in February of 2021, the district court was already raising these issues and said, what is your evidence that he actually wanted to elect in June of 2018? And what Smith's counsel said then is we don't have any evidence. And they were moving for preliminary injunction there. And when you're moving for some sort of action from the court, you can't just base your standing on allegations. You need to come forward with a little bit of evidence before the court's going to be exercising its power to change the status quo. But was he given notice by the district court that it was in the process of considering a dismissal based on standing ground? I believe they absolutely were, your honor. It's the August 13th order in this case saying, bring your evidence to me. I want to see evidence in your supplemental briefs. And the very next paragraph says, and in those supplemental briefs, be sure to address jurisdiction, be sure to address mootness. And so I don't know how much clearer the court could have been other than to spell out here are my seven concerns with your standing and please give me pieces of evidence. And also remember what I said back in February about how I was deeply troubled that you had not come forward with any evidence that you actually wanted to allege this. And I mean, they can't plead that and they have not pled that and they certainly have not proven it. And I think that's in part, I mean, we don't have this definitively shown and Mr. Hahn faults the district court for speculating, but let's keep in mind the burden on, the burden is always on the plaintiff who is seeking relief from a federal court to establish that that court has the authority to act in his or her case. We have a published decision that was issued earlier this cruise is limited where we say when the court entertains its jurisdiction, and I'm quoting, it must give the parties notice and an opportunity to be heard. Yes, Your Honor. And I do think that that was provided both back in February, and then most clearly in August 13th order, two weeks before the hearing, and they had a seven hour evidentiary hearing where all this was fair game. And as Judge Pryor alluded to, Mr. Smith was able to submit a that went to these standing questions, but it did not address whether or not he understood the form that would have been a great time for him to put forward some proof to say, I got this form, but I didn't understand what it meant, or I got this form. And I didn't even understand I should ask my lawyers about it when I called them on June 26. And when I called them again on June 28, even though my 11th circuit merits case on Atkins had already been briefed in March, and in May of 2018. So we don't know what they talked about. And Mr. Smith's court counsel has not sort of dug in to figure that out. If discovery had continued, then maybe he would have been able to demonstrate that he was without knowledge of his rights under the under the form. I have trouble imagining though, Your Honor, what more evidence he would need for from us, for example, what evidence that is not already within his possession, that he couldn't have brought forward after getting that order in August or after the February hearing when the court flagged this issue for him. I have trouble imagining why that couldn't have come forward. I don't think Commissioner Dunn knows what Mr. Smith was thinking when he received the form in June, or what Mr. Smith and his lawyers talked about after he received the form. What's your what's your response to Mr. Hahn's argument that it was the inability to have to make an informed election that was caused by the ADA violation as they've alleged it. In other words, it doesn't matter what he would have elected because he was deprived of the opportunity to make an informed election at that time. I don't see what sort of like prospective injunctive relief that would grant them at this stage. This policy doesn't exist anymore. If it discriminated against him, he will not be discriminated against again. And so all we really have is sort of a bare statutory violation. And that wasn't enough in the Burke Hall case. That was not enough in the Aaron private management case. That's not enough in cases like Spokio and cases like TransUnion from the U.S. Supreme Court. You still have to have a concrete injury. So the mere statutory violation, I think, if I'm reading the briefs correctly from Mr. Smith, that they seem to really be relying on this notion that a pure statutory violation is in and of itself enough to confer Article 3 standing. But that violates black letter case law on standing. They cite Burke Hall for that proposition, but Burke Hall is to the contrary. But isn't the argument, Mr. LaCour, isn't the argument not just that it's a mere violation, but that the violation is going to lead to execution by one method that is more painful than the other possible method? Only if he was actually going to injury in fact, right? If you allege that you are going to undergo execution by a very painful method and the method you're advocating for is a more humane, less painful, more tranquil method, you've alleged injury. In fact, you may have all sorts of problems with traceability and I mean, you could situate these arguments in the causation prong if you wanted to, and I think they have just as much force and support the district court's decision to the same extent. I don't think the injury, I still have trouble seeing that as a legally cognizable injury here. He alleges that he was discriminated against because he wasn't able to participate in. But he has forever lost the opportunity to elect to be executed by nitrogen hypoxia because of the ADA violation. Isn't that the injury? That is what we're hearing, but that's not what is actually pleaded in the complaint. He has not said because of this, therefore that. He has said, I have cognitive disabilities and without assistance, I wasn't going to be able to take advantage of this form. He does not allege that he didn't have assistance and we know now he did have access to assistance. It's plain as day, it's not disputed here. So I don't see how that is the fault of the defendants in this case. The same problem that Aaron management people faced, they said, well, this Georgia law is getting in our way, but what this court said was, well, yeah, but even if it wasn't there, it wouldn't have made difference for you because you're not ready to build a methadone clinic. You're just bringing this challenge. The same with the Carnegie Adams, another case that I apologize, it's not cited in our brief, but it's the Supreme Court decision from December of 2020 over the independent judicial candidate in Delaware who was challenging the Delaware state law that required you to run or to seek nomination for Delaware state courts as either a Republican or as a Democrat. He said, this violates my rights. What the Supreme Court said was there's no indication you were actually able and ready to seek this nomination. So yeah, you might've pleaded a great case on the face of it. This looks like it could be a first amendment issue for sure, but it's not your issue. And again, imagine a blind inmate who received the form and no one ever read it to them. And then his lawyers show up a month later and they say, oh, what's that? And then they pick it up, they read it to them. And Mr. Jones says, oh, well, yeah, I wanted to stick with lethal injection anyway. Like there's no harm then. There might be some discrimination. It would have been better practice perhaps for the department of corrections to have read the form to him when they passed it off if they knew that he was blind. But it's hard to see how a year and a half later that would give rise to some injunctions, some injunctive relief that he would be entitled to. And of course his lawyers, it would be the easiest thing in the world if he heard the form and said, oh my goodness, I'd much rather have nitrogen hypoxia if I had only known back in June. That'd been the easiest thing in the world for his lawyers to put that in the complaint, but it's not a Mr. Smith's complaint. And the best we have is that in December of 2020, 30 months after this period ran, we get a call from his lawyers or an email from his lawyers asking finally for the ability to opt in, which is pretty poor evidence that Mr. Smith wanted to opt in two and a half years earlier. And remember too that the law was signed in March of March 22nd, 2018. We have evidence in the record from the preliminary injunction hearing from Warden Rabon that he had heard inmates talking about nitrogen hypoxia even before June. There's evidence, of course, that death row inmates talk to each other about various issues. So perhaps it is conceivable that Mr. Smith had never heard of hypoxia, had no thoughts on the matter whatsoever. But that's not our burden to prove the negative. That's his burden to come forward with some allegations at the beginning and then with some evidence later. And we simply don't have that. Mr. Smith, an opportunity to file a third amended complaint before entering a sua sponte order without a motion to dismiss from the commissioner? I mean, I suppose the court could have and then perhaps, I mean, if it's a dismissal for lack of standing, perhaps I could file again and seek some relief again. I mean, I would have trouble imagining them curing this jurisdictional problem. I think they would have cured it after the judge raised these issues back in February of 2021 saying, where's your evidence? You actually wanted this. If they had it, they could say, here it is. But instead, the evidence is he talked to his lawyers in June and nothing. I mean, we get a declaration from him two months ago and nothing. Let me just ask a practical question. Is it possible, I mean, why can't the state execute him with nitrogen hypoxia? Could the state do that if it wanted to in the absence of a of a completed 272 election form? Your honor, the statute does not contemplate that. It contemplates one opportunity. And so we would have to go outside the statute. I don't think that statute confers that sort of authority on the board and the commissioner. What if it was ordered by this court? Could Alabama execute him by nitrogen hypoxia? Well, leave me aside the fact that nitrogen hypoxia protocol has not been finalized. This is not practically available. There is a chance that if there was an order that made lethal injection unavailable, then that might trigger the statute and make nitrogen hypoxia then available for the warden to use. I want to go back. No, I'm sorry. Go ahead, Judge Fryer. Oh, no, I was going to go back to the injury question. And I'm thinking of a hypothetical and like Judge Jordan, I know you disagree that this is like our case. OK, but just accept my hypothetical. And let's suppose there's a blind claimant who participates in a program to elect disability benefits, for example, and claimants have 30 days to elect under the program. And let's say that the administrator of the program violates the ADA by not reasonably accommodating the blind claimant within the 30 day window. If that plaintiff were to sue for injunction of relief after the election window closed, would she have future harm necessary for an injunction if she has no other way to receive those benefits? And I apologize, Your Honor, in this context, was this notice required by the statute or is this something that was done separate and apart? It's not part of my hypothetical. It's just that there was an violation of the ADA that led the claimant not to be able to elect within that window. So now she comes back and she sues and she says, I want injunctive relief to enable me to elect. Is that stating future harm for purposes of standing injury in fact requirement? In that scenario, if the plaintiff could just make sure I'm doing this right, your hypothetical plaintiff could show that, but for this ADA violation, she would have elected and taken advantage. What's your best case to support that requirement? But for, I mean, I think you've got Carney v. Adams, you've got Burkle, which was cited by Mr. Smith, and you have the Aaron private management case. It's sort of that able and ready and willing. I'm talking about standing cases, not cases on what's required for proximate cause of summary judgment. Right. No, Aaron, Carney v. Adams is a standing case, as is Aaron private management company, if you bury. Those are both on standing where, again, you had someone who said that this violation and Aaron private management, it was a Title II violation, is the reason why I've been harmed because I was ready to build that methadone clinic, but for this Georgia law that violates Title II in a discriminatory manner. And the court said, no, even if that wasn't there, you would not have built this. And that's what we're saying here. And that's what the district court said here is, no, even if the form had not been distributed, you would not have elected or no, even if the form is distributed and you'd been provided all the reasonable accommodations that you could have been provided, you would not have elected. And so there's no standing here, whether you think of that as no injury, because you're just not one of those people who actually wanted to elect. So it's just, what's it to you that you didn't elect, didn't have a full opportunity to elect because you didn't want to anyway, or whether you think of that as causation, there's just not standing. On redressability, Mr. LaCour, the district court spent 12 pages explaining why it didn't think that it had the authority to grant relief. But isn't redressability a relatively simple analysis in this case? In other words, if Mr. Smith can prove his ADA claim, the district court issues an order to the Alabama Department of Corrections, reopening the 30 day window and providing him with a reasonable accommodation to make the choice. What more is there to redressability than that? So we're required to accept the validity of the plaintiff's claim in addressing standing. Your Honor, I think if the statute had imposed some sort of notice requirement on us, then your analysis might be correct. But what we have here is a statute that does not require any sort of notice whatsoever. But that's a merits issue. That's a merits issue. That's whether he loses on the merits of his ADA claim, not whether or not the court can redress the alleged injury. The Supreme Court told us in Worth v. Selden, and we've said it expressly in Culverhouse, that you have to assume the validity of the plaintiff's claim in analyzing standing. In other words, you have to assume that the plaintiff is going to win on his or her claim. So if you assume that Mr. Smith wins on his ADA claim, how is this violation not redressable through a court order requiring the Alabama Department of Corrections to provide him a new window and give him a reasonable accommodation? I think we have to look at what his claim actually is to see what sort of redress he's entitled to. And his claim is not that the statute has a problem. His claim is that his claim arose on June 26th when, by his own telling, when the form was distributed. But that form was not a part of the statute. To the extent you accept that that was a program implemented by the defendants, that's something separate and we use the example in our brief. Imagine the Secretary of State had looked at this law and thought, oh, the inmates should really know about this and sent a copy to all of them, but the blind inmate couldn't read it. The cognitively deficient inmate couldn't understand it. You could file a Title II claim against the Secretary of State and probably get an injunction from him doing that in the future without some sort of reasonable accommodation. But I don't think it would be appropriate for the court to grant a stay when the merits aren't even in front of this court. Mr. Smith did not brief the merits in any way. And all they've requested is a remand for the district court to look into the merits. So any sort of stay when you have to show likelihood of success on the merits and the merits are not even in front of this court would be incredibly improper. Plus, there's no good excuse for delaying this long. For making that request for a stay, the district court decision came down at the end of September and we're now able to execute Alabama death row inmates who will fill the form out within the 30-day period by nitrogen hypoxia. At the moment? Yes. We do not have a functioning nitrogen hypoxia protocol at the moment. So the only practically available method or the only method we've used in the last years is lethal injection. Well, Mr. Smith is scheduled to be executed on October the 21st? Yes, 30 years after he murdered Ms. Sharma and he's scheduled to be executed by lethal injection as provided by statute. What if he had filled out the form within the 30-day opt-in window? Then he would have opted for nitrogen hypoxia and by statute he would be slotted for nitrogen hypoxia execution, which would not be this week because it is not ready within the next eight days. All right. Thank you, Mr. LaFleur. Thank you. Mr. Hahn, you reserve some time for rebuttal? I have, Your Honor. May it please the court. I have a couple of things I would like to note. One is that I believe we inartfully and during my friend's presentation, I went back through the amended complaint, which is tab 3, document 36. And if you look at paragraphs 29 and read that with paragraph 65, I think we managed to inartfully allege that he would have opted in. And I will read briefly from that. Paragraph 29 reads, before, on, and after the effective date of Senate Bill 272, Mr. Smith had and has cognitive deficiencies such that he could not and cannot personally make the decision to elect a method of execution, absent reasonable accommodation. If you then jump to paragraph 65, which is claim one, until and unless such reasonable accommodations are developed and implemented, barring Mr. Smith from the benefit of avoiding a substantially painful execution via lethal injection violates the ADA. We would note that that, given the standard here that we are at, that that establishes there's a claim there that he would have opted in. Can you tell me those paragraphs again? Yes, sir. It is paragraph 29 and paragraph 65, and that's at tab 3 of our appendix, which is document 36 in the trial court below. The other... Mr. Hahn, I'm generally sympathetic to your standing argument, but if you read those two, they're also somewhat at odds with each other. Because if you're saying that he was cognitively unable to make the decision during the requisite 30-day window, somehow, some way, he became cognitively able to make the decision by the time you requested the alternative method for him. So what are we supposed to make of those two allegations? Yes, Your Honor. I could see how they could be... they could fight against each other. I would note, though, that once a person has gotten that accommodation elsewhere through perhaps new counsel who comes in and is able to assess and appreciate and explain something to someone, that that might change the scenario. In other words, to use Judge Pryor's example, I believe it was, about the blind person attempting to get disability benefits. At some point, that person became aware that the disability benefit window had closed, and how they became aware of that may go ultimately to the reasonableness of any but would not relieve the offending party of their obligation and remove the ability to raise a claim. Tab 15, we talked a little bit about the order. My friend talked a little bit about the order that the judge issued on August 13. What happened was Judge Marks was not happy that the parties had slammed her with 1,660 pages of evidence in the 72 hours before the hearing on the preliminary injunction. She then ordered as follows. It's Doc 112, but as I said, it's Tab 15. If you look at the paragraphs that she ordered, she ordered that on or before noon on August 20, 2021, the party shall file supplemental briefs with documentary evidence in support of or in opposition to the motion for preliminary injunction. There's then bold stuff saying that it needs to be accompanied by specific reference. Then you skip down one paragraph. You have a brand new paragraph that says, in their supplemental briefs, the parties are directed to specifically address this court's jurisdiction, whether the plaintiff has standing, whether the injury alleged is redressable, and or whether this case is moved. Then you go down another paragraph, and she explains what the purpose of the hearing is, and that is an evidentiary hearing and oral argument on the motion for preliminary injunction is reset. She distinguished between her jurisdictional concerns and the evidentiary burdens of a motion for preliminary injunction. We would note that at that hearing, as you see in footnote 10 of our opening brief, she prevented me from asking questions that she believed went to jurisdiction. When you read that together, it is clear that there was not notice that the court intended to dismiss based on controverted evidentiary findings. We would note that Mr. Smith has met the standard. It is a very low bar to meet for since December of 2019, when he initially filed the suit until last week, the state agreed with us on standing. Defendants, I'm sorry, agreed with us on standing. We believe standing has been met here, and we would ask that this court vacate and remand and expedite the mandate if we do prevail so that Judge Marks can make the determinations that are necessary for Mr. Smith to obtain the preliminary injunction that we believe he's entitled to. Well, Mr. Hahn, what do you say to Mr. LaCour's argument that regardless of what the preliminary injunction hearing was about, you certainly had notice and an opportunity to submit any evidentiary materials you wanted in writing that would address the issue of standing. And so you could have put on an affidavit or a declaration from Mr. Smith, for example, explaining what difficulties he encountered, why he wasn't able to make the decision, what he has learned since then, et cetera. But there's nothing like that, I think, in your submission. And according to Mr. LaCour, that creates a hole in your standing argument. How do you respond? Well, Your Honor, that does not go to standing. That goes to the merits. The reality here is, according to Moody and according to the cases that Moody cites, and I know I'm beating a drum here on Moody, but it is the most closely analogous case here. And in Moody, what this court said was, quote, there is no Article III requirement that Mr. Moody demonstrated connection between the injury claims and the rights being asserted. There's not, as Judge Pryor noted earlier, we're not at the stage where we're talking about but causation or proximate cause. We're simply saying, has he alleged an injury? In fact, we believe he has. Has he alleged causation or traceability? Can it be traced? Well, by statute, the warden of Holman Correctional Facility, which houses Mr. Smith, happens to be both his statutory executioner and the person tasked with receiving any and all opt-in forms. The Department of Corrections is headed by Jefferson Dunn, the defendant who is required to implement the laws of the state of Alabama that govern Department of Corrections matters. And third, that we have redressability. We believe we've met all three of those. And to the extent that the court below decided to get into the merits in a jurisdictional analysis, though, that is dicta and unnecessary for this court to consider a resolve at this point. Unless this court has further questions, we would simply ask that this court expeditiously, and we do appreciate the court granting oral argument and granting expedited briefing. We understand that this court is busy, but we do appreciate that. And we thank the court. And thank you. All right. Thank you, Mr. Hahn and Mr. LaCour. We'll take the matter under advisement and the court is in recess. Thank you.